HENLEY *vs.* THE BRANCH BANK AT MOBILE.

1. Misrecitals in a sheriff's deed of the judgment or process, under which the sale was made, will not authorise the rejection of the deed as evidence, in an action by the purchaser to recover possession of land.

2. Where no question is raised in the primary court, by plea or otherwise, as to the right of a corporation to hold land or maintain an action for its recovery, the objection cannot be made for the first time in this court.

3. A tenant is estopped from setting up against his landlord or those who claim under him a title adverse to that which he acknowledged by his tenancy. If he relies on a title acquired after the term of his landlord expired, he should show or propose to show it in connection with his evidence of title.

4. A verdict in an action of trespass to try title, which describes the premises as "lot number twenty-eight in the plat of the town of Pickensville in Pickens county," is sufficiently certain to support a judgment.

Error to the Circuit Court of Pickens. Tried before the Hon. Samuel Chapman.

Trespass to try title by defendant against plaintiff in error to a lot of land, described in the declaration as the lot in the town of Pickensville, Pickens county, known in the plat of said town as number twenty-eight. In support of its title the plaintiff below introduced in evidence two judgments in its own favor, founded on the same cause of action—one against Robert Purvis for $2567 97; the other against Warren Andrews for $2480 36; also a writ of *fieri facias* issued on each of these judgments, endorsed as levied on the premises in question, and a *venditioni exponas* on each, commanding that said premises be exposed to sale, &c. The plaintiff then offered to read to the jury the deed executed to it by the sheriff, which deed conveys said lot, but describes the writs, under which the sale was made, as two writs of *venditioni exponas* by which the sheriff is commanded to make of the goods &c. "the sum of $4045 33." To the introduction of this deed the defendant objected, but the court overruled his objection and the deed was read to the jury. The plaintiff proved that on the day the *fi. fas.* were levied, the defendant admitted that he rented the premises from Purvis & Andrews, and that he then held possession as their tenant; and further proved, that within three or four days after the plaintiff's purchase at the sheriff's sale, its attorney continued the defendant in possession at a stipulated rent, and that subsequently, the defendant, alleging that he had acquired a title in his own right, refused to pay the rent, whereupon this suit was instituted. The defendant then offered to show a regular chain of title in himself, derived, since the purchase of the plaintiff and before the commencement of this suit, not from Purvis & Andrews or either of them, but through another and different source, but the

40

plaintiff objected to the evidence and the court sustained the objection. The court charged the jury that if they believed that the defendant was the tenant of the said Purvis & Andrews, he could not, when sued for the possession of the premises by the purchaser at the sheriff's sale, set up a title adverse to that of the said Purvis & Andrews, the defendants in the executions, and not derived through or from them, although obtained before the institution of this suit. The verdict of the jury described the premises in accordance with the description given in the declaration.

To the several rulings of the court and to the charge given the defendant excepted, and now assigns them and the judgment as error.

P. & J. L. MARTIN, for plaintiff:.

1. The defendant in error has no legal existence as a body corporate, having been destroyed by a public act of the Legislature, of which this court will take notice, and hence has no legal capacity to hold lands, or to sue for the same. See Clay's Digest, 120, §'s 1 & 2.

2. The evidence of title presented by the defendant in error was not sufficient to warrant a recovery of the premises in question, the sheriff's deed being entirely unsupported by the judgments and process thereon, produced in evidence. In this ground, the discrepancies between the levy or return and the deed, the description of the premises sold, and that conveyed, the process under which the same was sold, &c. are included. See 6 Ala. Rep. 221; 2 ib. 682; 4 ib. 321 and 402.

3. The improper rejection of the testimony of the plaintiff in error. The testimony was legal, and ought to have been received; its weight could have been controlled by the charge of the court; as however it was rejected, the plaintiff in error is entitled to the benefit of any chain of title that might have existed, not being permitted to show the character of that offered, or its quality.

4. The charge given by the court below was erroneous upon the testimony before the jury. It, in effect, placed the whole cause upon improper or false grounds, in this, that if the plaintiff in error was the tenant of the defendants in exe-

cution, although their interest may have ceased, still the plaintiff in error could not set up a title from one who had the remainder in the premises, after the expiration of the term of said Purvis & Andrews, his supposed landlords.—Carlton v. Randolph, 8 Ala. Rep. 606; 1 Marshall 99; 2 B. Monroe, 234; 6 Wend. 666; 5 ib. 44; 21 Wend. 121; 6 Ala. Rep. 230.

5. The lands are not sufficiently described by the verdict to authorise the judgment.—Sturdevant v. Heirs of Merrell, 8 Porter, 317; Bennett v. Morris, 9 Porter, 171; Jenkins v. Noel, 3 Stewart, 60; Driver v. Spence, 1 Ala. Rep. 540.

ORMOND, contra.

1. The defendant cannot set up a title adverse to his landlord.—Randolph v. Carlton, 8 Ala. 606; Doe v. Eslava, 6 ib. 230.

2. The sheriff's deed cannot be attacked in this collateral way. If any irregularity has supervened, objection can only be taken by the defendant in execution.—Fournier v. Curry, 4 Ala. 321; Ware v. Bradford, 2 ib. 676; Love & Williams v. Powell, 5 ib. 58; Allen v. Best, 6 ib. 234.

3. As to the right of the Bank to sue, that question should have been made in the court below, by plea in bar or abatement, and cannot be raised here for the first time.

4. As to the right of the Bank as purchaser of the title of Purvis & Andrews to the rent, see Coker and Pearsall, 6 Ala. 542. And in addition, it is proved by the record, that the plaintiff in error rented from the defendant in error after his purchase.

CHILTON, J.—This was an action of trespass to try title, &c. to a store house and lot in Pickensville, bought by the defendant against the plaintiff in error. There was a verdict and judgment for the plaintiff below, for the recovery of the lot and two hundred dollars damages for the detention.

Upon the trial the defendant objected to the introduction by the Bank of evidence to the jury of a deed, executed by the sheriff of Pickens county, for the premises in question. This deed is made to the Bank, and recites that the sale was made in virtue of two writs of *venditioni exponas* at the suit of the Bank against Andrews & Purvis, by which said sheriff was commanded of the goods, &c. of the said Andrews & Purvis,

to make the sum of $4045 33, recovered in the Circuit Court of Mobile county by said Bank, &c.

1. The record does not disclose that the objections now urged were made in the court below to the introduction of the deed: But if they had been formally taken, and the points now raised in respect to the variance between the judgments and the executions and the recitals in the deed from the sheriff, ruled by the primary court against the plaintiff in error, still we think there is no error in admitting the deed. It would result in most inconvenient and mischievous consequences, if the deed from the sheriff to a purchaser under execution could be collaterally attacked, and if the purchase could be rendered inoperative by mere misrecitals of the process, when it is manifest the court, by virtue of whose process the sale was made, could amend and set the matter right, and thus render ineffectual a direct application to vacate the sale. This would in effect, enable the party to do collaterally what he could not do directly. In Ware v. Bradford, 2 Ala. Rep. 676, it was held, that a sheriff's deed could not be collaterally impeached for any irregularities in his proceedings, or in the process under which he sells, that all that is essential in such case is a judgment, execution thereon, levy, and the sheriff's deed. So in Love & Williams v. Powell, 5 Ala. Rep. 58–59, it was held, that the sheriff's deed could only be impeached collaterally by showing fraud in its execution, if the process under which the land was sold was supported by an existing, operative and unsatisfied judgment. See also Allen v. Best, 6 Ala. Rep. 234; 6 Porter, 444. The process under which the sheriff in this case sold the land, gave him full power to make the sale, and we think the misrecital in his deed of the power under which he sold, when by reference to the levy it can be sufficiently identified, should not avoid his conveyance any more than the misrecital of the power of attorney in a deed made by an agent. If the subject matter is well ascertained, and the existence of the power is shown which authorises the sale and conveyance by him, a misdescription of the amount of the judgment will not vitiate the deed, if it be shown the sale was made by the sheriff under process issued upon such judgment; otherwise, a *bona fide* purchaser would be responsible for all the errors of the officers of the court, resulting in the want of

strict conformity between the judgments and the executions, and the process and recitals in the sheriff's deed, and thus it would frequently happen his title would be defeated by the clerical misprisions of the officers of the court—see as to such variances, Driver v. Spence, 1 Ala. Rep. 540. The sheriff's deed was clearly relevant testimony and should not have been rejected. The description of the land in the levy is sufficient: more laxity of description is allowed in such case than in private conveyances.—10 Watts Rep. 100. See also Driver v. Spence, *supra*; 1 Watts & Serg. 533.

2. But it is insisted the Bank has no legal existence as a corporation, and cannot therefore hold land, or maintain this action for its recovery. The plaintiff in error relies upon the statute which declares, that the Branch Banks shall be continued in operation soley for the security and collection of their debts and the full settlement and liquidation of their affairs, and " that no real or personal estate shall be taken in payment or settlement of any debt due any one of the said Branch Banks."—Clay's Digest, 120 §'s 1, 2. The question, however, here sought to be made for our revision, is not in any way presented by the record before us, as no objection by plea or otherwise was made in the court below calling in question the right of the Bank to hold land, or its power to maintain the action. The defendant below, having appeared to the action, and having failed to make the objection, must be considered as having waived it, and should not be allowed to make it for the first time in this court. 6 Ala. Rep. 275 and cases cited; ib. 679; ib. 844. But had the power of the Bank to purchase or hold the estate or to maintain the suit been properly questioned in the court below, we should feel no hesitation in adhering to the decision in Martin v. The Branch Bank at Decatur, 15 Ala. Rep. 587, as a correct construction of the enactments.

3. The relation of landlord and tenant having been established, it is clear that the defendant is estopped from setting up a title adverse to that which he acknowledged by his tenancy. In Shelton, et al. v. Doe, *ex dem.* Eslava, 6 Ala. Rep. 230, it was held, that a tenant, when sued for the possession of demised premises by the landlord, is precluded as well during the continuance of the term as after its termination

from calling in question the title of his landlord, or setting up
an outstanding title in a stranger. It is further held, that the
only effect of a disclaimer of title of the landlord by the ten-
ant is to bar the entry of the landlord after the statute of limi-
tations forbids an entry. 3 Peters Rep. 44; 5 Wend. 246;
Randolph v. Carleton, 8 Ala. Rep. 606. These authorities
may suffice to show, that the defendant, occupying the rela-
tion of tenant to the Bank of the premises sued for, should not
have been permitted to prove a title in himself adverse to his
landlord, and that the court very correctly excluded his evi-
dence of title. It follows also from what we have said, that
the charge of the court was correct. It but affirms the famil-
iar doctrine, that if the defendant held as tenant of the defen-
dants in execution, he could not set up a title adverse to that
under which he entered and held, so as to defeat an action to
recover the possession, brought by the purchaser under the
execution. The plaintiff claimed to hold, and to have pur-
chased the fee, and the tenant recognised this purchase by
holding under it and in subordination to such title. The title
then he proposed showing he had acquired since the renting
and before the suit was brought, was adverse to that his ten-
ancy recognised. If the defendant was in a condition to avoid
the estoppel his relation to the Bank created, as, for example
if the Bank by its purchase acquired but a term or leasehold
interest, which had ceased before he acquired his interest and
before the suit brought, he should have shown, or proposed
to show, this in connection with his chain of title which he of-
fered to introduce. He did nothing of this sort, but leaving
the estoppel in full force from the presumed continuance of
his lease, he proposed to override it by proving a title para-
mount to that of his landlord. The law forbids this. Sup-
pose Henly had been out of the possession and the Bank had
been in possession by some other tenant at the time of Hen-
ly's purchase—the possession of the Bank would have been
refered to the sheriff's deed, and regarded as *prima facie* ad-
verse, so that the deed to Henly, pending such adverse posses-
sion, would have been void. So neither shall he take advan-
tage of his possession as tenant to acquire a title which he
could not otherwise have obtained. If the circumstances un-
der which he held at the time he acquired the title were such

as authorised him to obtain an outstanding title, he should first have shown this fact, and then the court would have erred in excluding his evidence. The bill of exceptions, which must be construed most strongly against him, shows no such proposal, and the conclusion follows that the exclusion of the evidence offered and the charge of the court were correct.

The verdict, we think, is sufficiently certain to warrant the judgment. It describes the premises as "lot no. 28, in the plat of the town of Pickensville, in Pickens county." Many town lots would scarcely be susceptible of a more particular designation than by their numbers upon the plat of the survey of the town. The area, it is true, might be ascertained and proved, and the boundaries given, if there were natural objects by which to designate the lines; but in the case before us, reference being made to the plat of the town survey, we think the verdict and judgment sufficiently certain to enable the sheriff, without difficulty, to execute the writ of possession. 3 Humph. 626; 2 J. J. Marsh. 388; 4 Munf. 468; 5 Watts, 371. The case at bar is entirely unlike the cases of Sturdevant v. The Heirs of Merrill, 8 Porter's Rep. 318, and Bennett v. Morris, 9 Porter, 171. In the first case, the land was described as bounded on the *west and south by lands which were vacant in 1804.* In the other, the boundary was given thus, "One hundred and twenty feet on the south side of St. Michael's street, *commencing at the centre of the house occupied by James Wilson in 1817*, &c." These descriptions were held too uncertain, as it would have been a difficult, if not an impossible undertaking, for the sheriff to ascertain what lands were vacant in 1804, west and south of the points designated, or what house was occupied by James Wilson in 1817. In the case before us, however, the plat of the town, which is usually preserved, will furnish the sheriff an easy and certain means of executing the process of the court.

We can see no error in the record, and the judgment is consequently affirmed.